NO. 21-2288

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

CALVIN CHOICE,

Plaintiff-Appellant

v.

UNIFUND CCR, LLC and KOHN LAW FIRM, S.C.,

Defendant-Appellee

Appeal from the United States District Court
For the Northern District of Illinois,
Eastern Division
Case No. 19-CV-5773
The Honorable Sharon Johnson Coleman, Presiding

## BRIEF AND SHORT APPENDIX OF PLAINTIFF-APPELLANT
## CALVIN CHOICE

The Law Office of M. Kris Kasalo, Ltd
Mario Kris Kasalo
4950 Madison St.
P.O. Box 1425
Skokie, IL 60077
P: (312) 726-6160
F: (312) 698-5054
E: mario.kasalo@kasalolaw.com

*Counsel for Plaintiff-Appellant*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2288

Short Caption: Calvin Choice v. Unifund CCR, LLC and Kohn Law Firm, S.C.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Calvin Choice

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Community Lawyers LLC, The Law Office of M. Kris Kasalo, Ltd.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Mario Kris Kasalo    Date: August 5, 2022

Attorney's Printed Name: Mario Kris Kasalo

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑  No ☐

Address: 4950 Madison St., P.O. Box 1425

Skokie, IL 60077

Phone Number: 312-726-6160    Fax Number: 312-698-5054

E-Mail Address: mario.kasalo@kasalolaw.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................................... ii

TABLE OF AUTHORITIES ....................................................... v

JURISDICTIONAL STATEMENT ................................................. 1

STATEMENT OF ISSUES ON APPEAL ......................................... 3

STATEMENT OF THE CASE .................................................... 4

    I.      Kohn sued Choice on behalf of Unifund to collect a defaulted consumer debt that Unifund alleges was purchased from Citibank...................................................................4

    II.     The complaint filed by Kohn on behalf of Unifund seeks to collect "statutory attorney fees" that have no legal nor factual basis in Illinois ................................................................ 4

    III.    Choice-Appellant alleges that he did not know that "statutory attorney fees" did not exist in Illinois for actions such as the one filed against him, and believed that he owed attorney fees to Defendants-Appellees.................................................5

    IV.    Choice alleges he would have paid the alleged debt had he known that the "statutory attorney fees" were not owed and were not collectible from him under Illinois law ......................................7

    V.     Choice alleges he incurred an injury as a result of Defendants' actions, both in the form of having to pay attorney fees and costs in the State Action to defend against a false claim, as well as suffering physical manifestations of extreme emotional distress, such as lost sleep, all due to Defendants' actions ........................................8

    VI.   The District Court dismissed the case based on its conclusion that the   First Amended Complaint failed to allege a concrete injury, and as a result, Article III standing................................................9

SUMMARY OF ARGUMENT.................................................11

ARGUMENT ................................................................................ 16

I.    Standard of review ............................................................... 6

II.   Article III standing requires a showing that a communication caused
      a consumer harm, and that that it led him to change his course of
      action or put him in harm's way .......................................... 6

      A.    *Casillas* and Post-*Casillas* cases ......................................... 17

      B.    The District Court erred in dismissing the case due to lack
            of Article III standing, as Choice has alleged facts that
            plausibily support that he was harmed, that he took a
            detrimental step as a result of Defendants' false claim for
            attorney fees, and that it affected his handling of his debts
            to his financial and physical detriment.............................26

            i.    Choice took a "detrimental step" due to his confusion
                  about attorney fees, which altered his response to the
                  same……………………………………………………28

            ii.   Paying an Appearance Fee to defend a false claim
                  confers Article III standing……………………..……….31

            iii.  Choice has plausibly alleged a claim for relief….......35

III.  The District Court erred in finding that Choice has, in alleging that
      he lost sleep as a result of Defendants' actions, not alleged a
      concrete harm…………………………………….......................36

            i.    *Pennell* is Inapposite…………………………….....…38

            ii.   Choice's Injury is Concrete…………………………39

            iii.  *Chuluunbat* supports that Choice's injury is
                  traceable to Defendants' actions, and is concrete…..41

            iv.   Choice's Injury is Particularized……………..…… 43

IV.     The District Court erred in relying on Choice's admission that he did not suffer actual damages, served before Choice was granted leave to file an amended complaint which added an allegation of actual damages…………………………………………………………43

      i.     By Allowing Amendment to Add a Request For Actual Damages, The District Court Should Not Have Dismissed the Case Based on an a Pre-Amendment Admission that No Actual Damages Were Suffered……………………………………………47

      ii.     Actual Damages and Actual Harm Are Not the Same Thing…………………………………………………49

V.     The District Court Should Have Allowed Discovery and Ordered an Evidentiary Hearing…………………………………………...50

CONCLUSION.................................................................................. 52

CERTIFICATE OF COMPLIANCE.................................................. 53

CERTIFICATE OF SERVICE.......................................................... 55

APPENDIX…………………………………………………………A-001--A-010

# TABLE OF AUTHORITIES

## Cases

*Apex Dig., Inc. v. Sears, Roebuck & Co.,*
572 F.3d 440 (7th Cir. 2009)……………………..……………………………29, 30

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)…………………………38

*Bazile v. Finance System of Green Bay, Inc.,*
983 F.3d 274 (7th Cir. 2020)……………………………………………8, 24, 25, 53

*Brandt v. Vill. of Winnetka, Ill.,*
612 F.3d 647 (7th Cir. 2010)……………………………………………..…36

*Brunett v. Convergent Outsourcing, Inc.,*
982 F.3d 1067 (7th Cir. 2020)………………….………...8, 22, 27, 31, 35, 42

*Casillas v. Madison Ave. Associates,*
926 F.3d 329 (7th Cir. 2019)……………………………….…20, 31, 33, 34

*Casio, Inc. v. S.M. & R. Co.,*
755 F.2d 528 (7th Cir. 1985)………………………………………………….…26

*Chuluunbat v. Weltman, Weinberg & Reis Co., LPA,*
2022 U.S. App. LEXIS 13713 (7th Cir. May 20, 2022)………..28, 29, 44, 45, 54

*Crabtree v. Experian Info. Sols., Inc.,*
948 F.3d 872 (7th Cir. 2020)………………………………………………35, 36

*Crowder v. Andreu, Palma, Lavin & Solic, PLLC*, 2021 U.S. Dist. LEXIS
69220, 2021 WL 1338767 (M.D. Fla. Apr. 9, 2021)…………………………37

*Freedom From Religion Found., Inc. v. Obama,*
641 F.3d 803 (7th Cir. 2011)……………………………………………...34

*Gardner v. S. Ry. Sys.,*
675 F.2d 949 (7th Cir. 1982)……………………………………………48

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.*,
982 F.3d 1069 (7th Cir. 2020)............................................................5, 20

*J.B. v. Woodard*,
997 F.3d 714 (7th Cir. 2021)...................................................................41

*Kinnick v. Med-1 Sols., Ltd. Liab. Co.*,
2021 U.S. Dist. LEXIS 105303 (S.D. Ind. June 4, 2021)............................37

*Lako v. Portfolio Recovery Assocs.*, 2021 U.S. Dist. LEXIS 145776
W.D. Wis. Aug. 4, (2021)........................................................................33

*Larkin v. Finance System of Green Bay, Inc.*,
 982 F.3d 1060 (7th Cir. 2020)........................................................5, 9, 17

*Leung v. XPO Logistics, Inc.*, 164 F. Supp. 3d 1032, 1037
(N.D. Ill. 2015)......................................................................................34

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016)...................................................................16

*Lox v. CDA, Ltd.*,
689 F.3d 818 (7th Cir. 2012)...................................................................29

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).................27, 40, 43

*Markakos v. Medicredit, Inc.*,
997 F.3d 778 (7th Cir. 2021)...........................................................,,...28, 31

*Nettles v. Midland Funding LLC*,
983 F.3d 896 (7th Cir. 2020)................................................................6, 23

*Pennell v. Global Trust Management, LLC*
990 F.3d 1041 (7th Cir. 2021).............................................................24, 38

*Rivas v. Midland Funding, LLC*,
842 Fed. App'x 483 (11th Cir. 2021).........................................................37

*Robertson v. Allied Sols., LLC*,
902 F.3d 690 (7th Cir. 2018)...................................................................29

*Russell v. Taylor Law, PLLC,* U.S. Dist. LEXIS 207677
(N.D. Ind. Oct. 27, 2021)……………………………………………………………37

*Waldrop v. LTS Collections Inc.,*
2020 U.S. Dist. LEXIS 208548 (D. Ariz. Nov. 6, 2020)……………………………37

*Silha v. ACT, Inc.,*
807 F.3d 169 (7th Cir. 2015)………………………………………...…27, 35

*Smith v. GC Limited Partnership,*
986 F.3d 708 (7th Cir. 2021)……………………………………………6, 23

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)……………………...……17, 40, 49

*Spuhler v. State Collection Serv.,*
983 F.3d 282 (7th Cir. 2020)……………………………...5, 16, 22, 28, 29, 30

*Warth v. Seldin,*
422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)……………………..27

## Rules, Statutes, and Other Authorities

15 U.S.C. § 1681……………………………………………………………32

15 U.S.C. § 1692…………………………………………………………………1

15 U.S.C. § 1692c(c)……………………………………………………24

15 U.S.C. § 1692e ……………………………………………………passim

15 U.S.C. § 1692e(2)……………………………………………… 22, 29

15 U.S.C. § 1692e(5)……………………………………………… 29

15 U.S.C. § 1692e(10)……………………………………………… 29

15 U.S.C. § 1692f…………………………………………… 17, 18, 22

15 U.S.C. § 1692g…………………………………………… 17, 23

28 U.S.C. § 1331.................................................................................................1

Fed.R.Civ.P. 36..........................................................................................47, 48

# JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims of Appellant Calvin Choice ("Choice") arose under federal law, specifically the Fair Debt Collection Practices Act, 15 U.S.C. §§1692, et seq. (the "FDCPA").

On January 21, 2021, Choice filed an amended complaint alleging that Unifund CCR, LLC and Kohn Law Firm, S.C. (collectively "Defendants") violated the FDCPA by seeking "statutory attorney fees" when no such fees exist as to collection actions in Illinois, and sought both statutory and actual damages. On February 4, 2021, Defendant-Appellee, Unifund CCR, LLC ("Unifund") moved to dismiss Choice's amended complaint under Fed R. Civ. P. 12(b)(1), arguing that Choice failed to plead injury required for standing. On February 4, 2021, Defendant-Appellee, Kohn Law Firm, S.C., ("Kohn") similarly moved to dismiss Choice's complaint under Fed R. Civ. P. 12(b)(1) and 12(b)(6), arguing that Choice did not plead a concrete injury to establish standing, and that the complaint does not present a plausible claim, respectively.

On June 11, 2021, the District Court granted Unifund and Kohn's motions on the sole basis that Choice failed to allege an injury in fact, and the Court did not have subject matter jurisdiction over this case. [Order, Appx. A-

2 – A-5]. The District Court entered judgment for Unifund and Kohn that same day. [Order, Appx. A-1].

On July 12, 2021, Choice timely filed a notice of appeal [Dkt. #108] of the District Court's June 11, 2021 order dismissing the case on the basis that the first amended complaint failed to allege an injury in fact and, as a result, Article III standing [Dkt. # 105] and the corresponding judgment [Dkt. # 106] was entered on the same day.

## STATEMENT OF ISSUES ON APPEAL

Did Choice allege a concrete injury and particularized injury, caused by
Defendant(s), that would likely be redressed by the requested judicial
relief, to support the existence of Article III standing in his first amended
complaint?

## STATEMENT OF THE CASE

I.   **Kohn sued Choice on behalf of Unifund to collect a defaulted consumer debt that Unifund alleges was purchased from Citibank**

Choice incurred a credit card debt ("alleged debt") to Citibank, N.A. ("Citibank"), but thereafter encountered financial difficulty and defaulted on the alleged debt. [Exhibit A, First Amended Class Action Complaint, Dkt. # 76, ¶¶25-27]. Unifund alleges to have thereafter purchased the alleged debt, and thereafter hired Kohn to collect the alleged debt. [Dkt. # 76, ¶¶28-29]. Kohn, on behalf of Unifund, thereafter filed a lawsuit against Choice on July 11, 2019, in the Circuit Court of Cook County, Illinois ("State Action"), styled *Unifund CCR LLC v. Calvin J Choice*, Case No. 2019-M1-111728. [Dkt. # 76, ¶30]. The State Action lawsuit was served, along with a summons, upon Choice thereafter. [Dkt. # 76, ¶31].

II.  **The complaint filed by Kohn on behalf of Unifund seeks to collect "statutory attorney fees" that have no legal nor factual basis in Illinois**

Choice read and reviewed the State Action lawsuit after it was served upon him. [Dkt. # 76, ¶32].  In the State Action lawsuit, Defendants pray for the following:

> Wherefore, the Choice demands judgment against the defendant in the amount of $3,098.44 as well as the costs and disbursements of this action, statutory attorney fees and any other relief this court deems just and equitable. [Dkt. # 76, ¶35].

Unifund thus sought $3,098.44 plus costs and disbursements of the

State Action, plus attorney fees from Choice in the State Action, specifically

"statutory attorney fees" from Choice. Defendants did not state the amount of

money that they claim was owed in said attorney fees.

### III.   Choice alleges that he did not know that "statutory attorney fees" did not exist in Illinois for actions such as the one filed against him, and believed that he owed attorney fees to Unifund

On August 27, 2019, Choice filed a class action lawsuit against

Defendants, which sought statutory damages only as to Choice. [Dkt. # 1].

On March 4, 2020, Choice served his responses to Defendant Unifund's

Request to Admit, wherein he admits that he did not incur any actual

damages as a result of Unifund or Kohn's acts or omissions. [Dkt. #78-2,

PageID#:500]. On January 21, 2021, after the 7th Circuit Court of Appeals

decided a slew of cases regarding the requirement to allege and show an

injury-in fact, Choice filed an amended complaint asserting actual damages

as to both class counts, and alleging further facts to support his injury and

harm. [Dkt. #76, ¶¶63-65, 74-81, and each "Request for Relief" on p.15-16];

*See also Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir.

2020); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir.

2020); *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir.

2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th

Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir.

2020); *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 711 (7th Cir. 2021).

Choice alleged that he thought he owed much more than the amount stated in the State Action lawsuit due to Defendants' misrepresentation regarding attorney fees. [Dkt. # 76, ¶65]. Choice alleges that he was not aware, and the unsophisticated consumer would not be aware, that "statutory attorney fees" could not legally be recovered by Defendants. [Dkt. # 76, ¶62]. Choice hired an attorney to defend against the false claim, became obligated to pay attorney fees and costs, and paid an appearance fee in the State Action due to the fact that he did not understand the extent of this obligation to Unifund, including the amount of "statutory" attorney fees and costs for which he was claimed to be liable. [Dkt. # 76, ¶63]. Choice alleges Defendants were not entitled to "statutory attorney fees", as no applicable statute allows the recovery of such attorney fees from Choice. [Dkt. # 76, ¶¶37-38].

Choice further alleges he "would have sought to resolve the alleged debt instead of engaging in litigation, hiring an attorney which he would have to pay, and paying an appearance fee as he did, had he known the truth: that "statutory" attorney fees didn't exist as to his obligation, and that he would not be liable for any attorney fees in the State Action—he was thus harmed by Defendants' misrepresentation as to "statutory" attorney fees being assessed. [Dkt. # 76, ¶64]. Choice asserts that he also lost sleep due to

Defendants' actions. [Dkt. # 95-1, ¶14]. Choice also avers that he was confused regarding the amount of money that was being sought from him due to the false claim for attorney fees, and he thus hired an attorney to help him ascertain the amount of the alleged debt owed, whether attorney fees could be imposed, and in what amount. [Dkt. # 95-1, ¶16].

### IV.   Choice alleges he would have paid the alleged debt had he known that the "statutory attorney fees" were not owed and were not collectible from him under Illinois law

Choice alleges that he thought he owed much more than the amount stated in the State Action lawsuit due to Defendants' misrepresentation regarding attorney fees. [Dkt. # 76, ¶65]. Choice also alleges that he would have sought to resolve the alleged debt instead of engaging in litigation, hiring an attorney which he would have to pay, and paying an appearance fee as he did, had he known the truth: that "statutory" attorney fees didn't exist as to his obligation, and that he would not be liable for any attorney fees in the State Action; he asserts that he was thus harmed by Defendants' misrepresentation as to "statutory" attorney fees being assessed.  [Dkt. # 76, ¶64].

Choice further alleges that, upon reading the State Action lawsuit, he believed that a decision to contest the debt could have turned out to be much more costly than paying it, as Unifund's request for a judgment that included "statutory attorney fees" caused Choice to believe that the money he owed is

more than listed in the State Action complaint, and that the amount he

would owe in connection with the alleged debt would be much higher if he

chose to defend in the State Action. [Dkt. # 76, ¶¶ 63, 76]. Choice alleges that

the language at issue thus clearly suggested that Choice needed to pay his

debt (and the attorney fees) immediately, lest several unattractive

consequences befall him, including the continued assessment of attorney fees.

[Dkt. # 76, ¶77].

    **V.**    **Choice alleges he incurred an injury as a result of Defendants' actions, both in the form of having to pay attorney fees and costs in the State Action to defend against a false claim, as well as suffering physical manifestations of extreme emotional distress, such as lost sleep, all due to Defendants' actions**

Choice hired an attorney and became obligated to pay attorney fees

and costs, and paid an appearance fee in the State Action due to the fact that

he did not understand the extent of his obligation to Unifund, including the

amount of "statutory" attorney fees and costs for which he was claimed to be

liable. [Dkt. # 76, ¶63]. Choice avers that he in fact suffered physical

manifestations of emotional distress as a result of Defendants' false

statement that statutory attorney fees were recoverable, including loss of

sleep. [Dkt. # 95-1, ¶14]. Choice also avers that he was confused regarding

the amount of money that was being sought from him due to the false claim

for attorney fees, and he thus hired an attorney to help him ascertain the

amount of the alleged debt owed, whether attorney fees could be imposed, and in what amount. [Dkt. # 95-1, ¶16].

Choice also alleges that he thought that Defendants were potentially trying to trick him via the content of the State Court lawsuit, since two different, contradictory statements as to whether attorney fees were being sought were stated, and he asserts that he hired an attorney based on this belief as well. [Dkt. # 95-1, ¶15]. Choice avers that he would have sought to resolve the alleged debt instead of engaging in litigation, hiring an attorney which he would have to pay, and paying an appearance fee as he did, had he known the truth: that "statutory" attorney fees didn't exist as to the alleged debt, and that he would not be liable for any attorney fees in the State Action. [Dkt. # 95-1, ¶13].

## VI.  The District Court dismissed the case based on its conclusion that the First Amended Complaint failed to allege a concrete injury, and as a result, Article III standing

The District Court noted that "At the pleading stage, the court must determine whether the complaint clearly alleges facts demonstrating each required element", citing *Larkin,* 982 F.3d at 1064. [Dkt. # 105, p.2]. The District Court thus apparently dismissed the case on the basis that Choice did not plead facts that could support Article III standing. The District Court acknowledged that "statutory attorney fees" could not legally be sought from Choice, stating "In fact, the statute under which Kohn sued in Cook County

9

did not authorize attorney fees…". [Dkt. # 105, p.1]. However, the District Court also stated that Choice's argument that Defendants' false claim for attorney fees could result in a judgment for said fees if he did not defend the case "…implies a complete distrust in the court system; Choice assumes the state court would have completely disregarded the law and forced him to pay fees that were not owed." [Dkt. # 105, p.4].

The District Court further acknowledged that "Choice claims that if he had known defendants could not seek attorney fees from him, he would have paid the debt instead." [Dkt. # 105, p.3]. The District Court also noted that Choice also claims that he suffered actual damages of lost sleep from the emotional distress caused by defendants' actions." [Dkt. # 105, p.3].

The District Court nonetheless found that, because Choice did not pay the spurious attorney fees sought, and instead alleges that he took the detrimental step of hiring a lawyer, he cannot establish standing. [*Id*.]. The District Court did not consider or reference Choice's allegation in his operative complaint, and his later argument in his response brief, that he was damaged for the further reason that he paid an appearance fee in the State Action that he alleges he would have not paid had he been told the truth about his obligation for attorney fees (that he owes none). [Dkt. #105; Dkt.# 76, ¶¶63-64; Dkt. # 95, p.8]. To wit, the District Court thus erroneously stated that "Since Choice's *only other* claim of harm is hiring

counsel and the Court has held that such harm does not establish standing, Choice has failed to allege an injury in fact." [Dkt. # 105, p.3, emphasis added]. The District Court noted that Choice "admitted in discovery that he did not suffer any actual damages…Choice's admission that he did not suffer actual harm and failure to allege or argue any legitimate actual harm doom his complaint." [Dkt. # 105, p.3]

The District Court also concluded that Choice's allegations of lost sleep incurred as a result of Defendants' actions could not support standing, since in the District Court's view, "As a pure psychological harm, sleep deprivation caused by worry alone cannot establish standing." [Dkt. # 105, p.3]. This appeal followed. [Dkt. # 36].

## SUMMARY OF ARGUMENT

Choice's well-pleaded factual allegations plausibly suggest a claim of subject matter jurisdiction, as the allegations that: he would have sought to resolve the debt had he known that the "statutory attorney fees" being sought by Defendants did not exist, he paid an attorney and an appearance fee to defend against a false claim of said attorney fees that he would not have paid had he known the truth, and he experienced stress in the form of lost sleep as a result of Defendants' actions, are well pleaded factual allegations that must be taken as true, and which plausibly support an inference that he suffered a financial injury and physical manifestations of an emotional harm. [Dkt. #

11

76, ¶¶ 55, 59; Dkt. # 95-1, ¶14]. These injuries also evidence a concrete and particularized harm sufficient to support Article III standing.

In other words, it is wholly plausible that Choice would have paid the debt, as he alleged he would have, had he known that Defendants' claim that further attorney fees were owed were false, and thus he would have avoided paying both an appearance fee in the State Action and an attorney—all due to Defendants' misrepresentation in the State Action complaint. Choice also alleges that he suffered lost sleep, which is a physical manifestation of severe emotional distress. This harm also suffices for Choice to allege that he had Article III standing, and is not a "pure psychological harm" as found by the District Court. Choice has thus plausibly alleged facts that suggest that he suffered a concrete and particularized injury, and thus that Article III standing exists.

Moreover, the other bases upon which the District Court dismissed the claim do not support dismissal. The District Court broadly concluded that "This circuit is clear that hiring a lawyer cannot establish standing". [Order, Appx. A-4]. This conclusion sweeps too broad, however, as all of the recent previous decisions regarding whether hiring a lawyer can support standing dealt with collection letters, and none dealt with a consumer being forced to defend against a false claim of attorney fees, or face default judgment for the same if he decides to do nothing. The District Court also wholly ignored

Choice's other allegation of financial harm: that he paid an appearance fee that he would not have had to pay had he been told the truth—that "statutory attorney fees" were simply a creation by Defendants—since he would have sought to pay the debt instead of defending in the State Action. He thus would not have had to pay an attorney and appearance fee.

　　Nor is the District Court's statement that "Choice admitted in discovery that he did not suffer any actual damages" a further basis to find that no standing exists, as Choice (well after serving the response to the request to admit on damages) was thereafter allowed by the District Court to amend his complaint to allege both actual damages and facts to support both actual damages and a concrete injury—thus implicitly allowing the retraction of the admission that he suffered no actual damages, which was in line with the *previous* version of his complaint. This fact, as well as the fact that the District Court stayed discovery during the pendency of the briefing of the Defendants' motions to dismiss, so that Choice would be foreclosed from amending his admission, weighs against the District Court's finding that his admission that no actual damages were incurred torpedoes Choice's standing.

　　The District Court also improperly equated a lack of actual damages to a lack of actual harm, stating as follows:

Further, Choice admitted in discovery that he did not suffer any actual damages. Dkt. 78-2. <u>Choice's admission that he did not suffer any actual harm</u> and failure to allege or argue any legitimate harm doom his complaint.

[Order, Appx. A-5, emphasis added]

The District Court thus concluded and found that Choice's admission that he did not suffer "actual damages", before he amended his complaint to add this prayer for relief, is an admission that he "did not suffer actual harm". This is wholly incorrect, however, as the two inquiries do not necessarily equate to each other: one may be able to establish "actual harm" without establishing "actual damages", contrary to the District Court's false understanding. The reasoning of the District Court was thus erroneous, and the Order dismissing the case on the basis that Choice lacked subject matter jurisdiction and should be vacated, and this case remanded.

Moreover, though Unifund and Kohn's motions to dismiss indicated only a facial attack on the operative complaint, they also argued that Choice's responses to discovery requests, where he denies incurring actual damages, bar a finding that Article III standing exists. However, Unifund filed a motion to stay discovery [Dkt. #91], wherein Unifund argued "Because the motion to dismiss is jurisdictional, it would be improper for the parties to engage in discovery prior to any ruling on the pending motion to dismiss." [Dkt. #91, ¶11]. The District Court adopted this reasoning and granted the

motion to stay, yet nonetheless considered Choice's earlier-served discovery responses anyway as a factor in dismissing the case. However, as the admissions were made during the pendency of a previous version of the complaint, where Choice did not seek any actual damages for himself, the District Court's act of allowing amendment to add a prayer for actual damages was tantamount to allowing Choice to withdraw the admissions. This is especially so because no discovery was taken by Unifund and Kohn on the allegations contained in the amended complaint, as discovery was stayed during the pendency of the motions. The District Court thus erred in relying on the admission to find that Choice lacked standing.

The District Court also found that standing did not exist for the reason that, despite Defendants' express request for "statutory attorney fees" in the state complaint, "The risk of a court forcing Choice to pay attorney's fees was incredibly minimal…". The District Court's statement is both conclusory and optimistic, however, when one considers that Defendants at all times maintained that attorney fees *could* be awarded, as they were sought. Further, the District Court ignores that Choice paid an appearance fee that he would not have had to pay had he been told the truth, which is not a "risk", but a fact.

Ultimately, Choice has alleged a harm that is both concrete and particularized. He asserts that he was both financially and emotionally

injured by the actions of Unifund and Kohn in misrepresenting the existence of "statutory attorney fees", as he would have paid the alleged debt instead of hiring an attorney and paying an appearance fee to the state court; he also lost sleep as a result of worrying about the extent of said spurious "fees". The claim is plausible as well: it is wholly plausible that Choice could have resolved the debt had he known that he did not owe a further amount in "statutory attorney fees", and thus he would not have had to pay an appearance fee or hire a lawyer to defend the false claim—all due to Defendants' misrepresentations that he owed more money than he did. The District Court thus erred in dismissing this case on the basis that Article III standing was lacking.

ARGUMENT

## I. Standard of review

This Court reviews *de novo* whether Choice has satisfied the Article III standing criteria. *Spuhler v. State Collection Serv.*, 983 F.3d 282, 285 (7th Cir. 2020) (citing *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016)).

## II. Article III standing requires a showing that a communication caused a consumer harm, and that that it led him to change his course of action or put him in harm's way

The District Court misapplied the law when it dismissed Choice's complaint due to a lack of Article III standing, as Choice has plead facts—

16

here that Defendants misrepresented that "statutory attorney fees" were owed by Choice—that caused him both actual financial harm as well as emotional harm in the form of lost sleep.

### A. *Casillas* and Post-*Casillas* cases

A brief survey of the Seventh Circuit's *Casillas* and Post-*Casillas* decisions is instructive on what is required to allege, and then establish, Article III standing. In *Casillas*, the plaintiff claimed that the defendant had violated § 1692g—the provision requiring certain disclosures within a certain period of the initial communication to collect a debt—by not advising that the debtor was required to communicate in writing in order to trigger certain statutory protections. *Casillas v. Madison Ave. Associates*, 926 F.3d 329 (7th Cir. 2019). The plaintiff did not, however, allege that this omission in the notice harmed her or created any real risk of concrete harm. She didn't allege, for example, that she had tried to dispute the debt or even considered contacting the defendant to dispute or verify the debt. Based on this, the Seventh Circuit concluded, "Because the [defendant's] mistake didn't put Casillas in harm's way, it was nothing more than a 'bare procedural violation,'" insufficient to confer standing. *Id.* at 334 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016)).

In *Larkin v. Finance System of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020), the Seventh Circuit expressly extended the reasoning of *Casillas* to

claims under sections 1692e and 1692f (which are substantive prohibitions of certain conduct, as opposed to procedural contents of a 1692g notice at issue in *Casillas*). Section 1692e prohibits false, deceptive, misleading representations, while section 1692f prohibits unfair or unconscionable debt collection practices. The plaintiff claimed that the creditor violated these provisions by sending a collection letter that said, "You want to be worthy of the faith put in you by your creditor. . . . We are interested in you preserving a good credit rating with the above creditor." The district court dismissed the case for failure to state a claim under the FDCPA. On appeal, the Seventh Circuit held that the case instead should be dismissed without prejudice for lack of standing. *Id.* at 1063.

*Larkin* explained that the case or controversy requirement limits federal court jurisdiction to "concrete disputes presented in a form historically recognized as appropriate for judicial resolution in the Anglo-American legal tradition." *Id.* at 1064. The Seventh Circuit noted that at the pleading stage, the standing inquiry asks whether the complaint "clearly . . . alleges facts demonstrating each element in the [standing] doctrinal test." *Id.* The court found the plaintiff's allegations lacking the required injury in fact, which not only requires invasion of a legally protected interest, but must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* The court focused on the requirement that the plaintiff's

injury be "both concrete *and* particularized." "Particularized" means that the plaintiff was injured or affected in a "personal and individual way" as opposed to a general grievance shared by all members of public. *Id.* The court noted that the plaintiff had not articulated any injury—tangible or intangible—from the allegedly offending language in the letter she received, and thus lacked Article III standing.

*Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020), was issued just a day after *Larkin*. Convergent, a debt collector, sent Ms. Brunett a collection letter demanding payment of a debt slightly over $1000. It offered to accept 50% of the balance and added that if she couldn't afford that, she could contact Convergent to discuss other options. The letter went on to say that if the creditor forgave more than $600, it would be required to report that fact to the IRS.

Ms. Brunett alleged the statement about reporting to the IRS violated the FDCPA because it threatened action that cannot legally be taken and thus was a false statement. The Seventh Circuit noted that in these particular circumstances, the statement could be accurate, but rather than determining the merits, the court analyzed the Choice's standing.

During her deposition, Ms. Brunett acknowledged that she had not paid anything after receiving the letter and that the statement about possibly reporting to the IRS did not affect her credit rating or discourage anyone

from doing business with her. Instead, she testified that the letter was 'confusing,' but the court observed that she did not 'tie that confusion to any injury.' *Id.* at 1068. The Seventh Circuit dismissed the assertion that confusion is itself an injury, holding that it is not enough for the Choice to have been confused; the plaintiff must have acted (or not acted, as the case may be) because of that confusion. And the Court noted that being led to hire a lawyer because of that confusion "does not change the evaluation." "A desire to obtain legal advice is not a reason for universal standing." *Id.* at 1069.

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020), involved a letter sent to collect unpaid homeowner's assessments to a homeowners' association. The letter included the statement that "If Creditor has recorded a mechanic's lien, covenants, mortgage, or security agreement, it may seek to foreclose" it. The plaintiffs made no payment or other response to the collection letter. When the creditor filed a collection suit it did not seek foreclosure.

The plaintiffs alleged in their FDCPA case that, though the statement was not false, it was misleading because no rational creditor would foreclose on a two-thousand-dollar homeowner's assessment. The court dismissed the complaint on the pleadings because the statement about foreclosure was true. On appeal, all litigants focused their arguments on whether a true statement can nevertheless be misleading because it is unlikely to come to pass. The

20

Seventh Circuit instead focused on the plaintiffs' standing, which had not been raised in this court or in the initial appellate briefing.

In their supplemental briefing, the Gunns claimed they suffered annoyance and intimidation in receiving such a letter. *Id.* at 1071. The Seventh Circuit found that wasn't enough: "[T]the Supreme Court has never thought that having one's nose out of joint and one's dander up creates a case or controversy." *Id.* at 1072.

*Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020), is a noteworthy decision because it addresses the distinction between the standing requirement at and beyond the pleading stage, which is relevant here. The court held that though a complaint may survive dismissal for lack of standing, that does not end the inquiry. If the truthfulness of the allegations necessary to establish standing has been called into doubt, the trial court must address that dispute the same way it deals with other factual issues that determine whether it has subject matter jurisdiction, *i.e.*, an evidentiary hearing. *Id.* at 277.

The court noted (relevant to this case) that at the pleading stage, it may be enough to have general factual allegations of injury from the defendant's conduct that "plausibly suggest" the elements of standing. *Id.* at 278. But if those standing allegations are questioned—either by the court or the other party—then the plaintiff "must support each controverted element

of standing with competent proof," which the court described as "a showing by a preponderance of evidence, or proof to a reasonable probability that standing exists." *Id.*

The court also emphasized that district courts have a responsibility to police subject matter jurisdiction and that if the court has notice that the facts alleged in plausible support of standing are false or if the complaint "fairly shrieks" that there's no jurisdiction, then the court must conduct proceedings and get sufficient evidence to resolve the doubt. *Id.*

*Spuhler v. State Collection Service, Inc.*, 983 F.3d 282 (7th Cir. 2020), is the companion case to *Bazile,* having been heard by the same panel, having been written by the same judge, and having presented the same issue. *Spuhler* contended that because the collector did not include, in a dunning letter, a statement that the debt amounts would increase from the accrual of interest, the letter's account of the debts was misleading, contrary to the FDCPA's demands, *see* 15 U.S.C. §§ 1692e(2), 1692f. *Id.* at 284. The case was decided on the merits of the FDCPA claim in favor of the plaintiffs on summary judgment. On appeal, the Seventh Circuit held that at summary judgment, the plaintiffs also were required to supply evidence of "specific facts" that, "taken as true, show each element of standing." *Id.* at 285. Because the record did not contain any evidence that the absence of a statement about accruing interest had any effect on what these plaintiffs did

in the context of managing their debts or responding to letters, the Seventh Circuit vacated the judgment. However, the court rejected the defendant's argument that the plaintiffs lacked standing because they failed to allege a concrete injury in fact in their complaint, because the case was at the summary judgment—not pleading—stage. *Id.* at 285. Moreover, the court held that even if a complaint "'omitted essential jurisdictional allegations,' but evidence later demonstrates that the court has jurisdiction, 'the deficiency in the complaint is not fatal.'" *Id.* at 285-286 (quoting *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 530 (7th Cir. 1985)).

*Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020) was decided thereafter. There, the plaintiff brought an FDCPA claim against a collection company that sent her a letter that overstated her balance by approximately $100. On appeal, the defendant challenged the district court's order denying its motion to compel arbitration. The Seventh Circuit did not reach that issue, however, finding instead that the plaintiff lacked standing because she had not alleged that the misstatement of her balance caused her any harm or created "any appreciable risk of harm to her", and noting that she indeed admitted that the letter did not affect her at all. *Id.* at 900.

In *Smith v. GC Limited Partnership*, 986 F.3d 708 (7th Cir. 2021), the court reiterated its determination that the principle announced in *Casillas* applies not only to claimed procedural violations of the FDCPA but to

substantive violations as well. The plaintiff alleged that the collection company's letter advising that a dispute had to be in writing violated section 1692g(a)(3). In finding she lacked standing, the court observed that, although she said she was confused by the letter, she did not contend that the alleged lack of clarity "led her to take any detrimental step." *Id.* at 710. The court noted that even when her standing was challenged in the district court, she could not articulate a detriment. *Id.*

In *Pennell v. Global Trust Management, LLC,* 990 F.3d 1041 (7th Cir. 2021), the Seventh Circuit addressed an alleged violation of entirely different provisions in the FDCPA not considered in its earlier standing decisions. Section 1692c(c) prohibits a debt collector from communicating with a debtor who advises the collector that she refuses to pay and directs it to stop any further communications, and section 1692c(a)(2) prohibits a debt collector from communicating directly with a debtor who is represented by counsel. Ms. Pennell alleged Global Trust sent her a letter in violation of both these provisions. *Id.* at 1043. She claimed that the letter caused her "stress and confusion" and caused her to think her demand to cease communications had been futile. *Id.* It further caused her to question whether she was still represented by counsel. *Id.* Noting that it had found in *Brunett* that confusion or stress alone is not enough to establish standing, the court said

Ms. Pennell failed to show that receiving the letter "led her to change her course of action or put her in harm's way." *Id.* at 1045.

More recently, the Seventh Circuit decided the case of *Chuluunbat v. Weltman, Weinberg & Reis Co., LPA*, No. 21-1584, 2022 U.S. App. LEXIS 13713 (7th Cir. May 20, 2022). In that case, the Seventh Circuit held that the District Court improperly dismissed a debtor's class action against a debt collector—which allegedly sent misleading letters to the debtor and others similarly situated—for failure adequately to assert an actual injury. This was because the debtor's complaint alleged that the debt collector sent the debtor a misleading letter that induced him to forgo settling and instead to allow interest on his debt to accrue at a high rate, which was enough to show harm at that early stage as the debtor was not required also to allege that he could have paid the debt or that he did pay instead other debts. *Id.* at *1-2.

Although the debt collector raised a factual dispute about the debtor's solvency based on statements he made in other litigation on the theory that the debtor lacked standing to sue if he was unable to pay, the Seventh Circuit found that district court should have resolved that dispute with an evidentiary hearing. *Id.*

The Seventh Circuit found that the debtor's decision to forgo settling was fairly traceable to Weltman's purportedly misleading letter because, regardless of whether he knew the relevant law, he says he would have

25

accepted the offer if he had known it would satisfy the judgment and that interest would continue to accrue if he did not accept. *Id.* at \*10-11. The Seventh Circuit found that the debtor "was injured at least by the interest that accrued during the time between the letter and the call.", as he alleged that he would have paid the debt had he known that interest was accruing on it, which he only found out many months after he received the offending letter, when he spoke to Weltman and was informed that interest was accruing. *Id.* at \*10. The Seventh Circuit vacated and remanded the case for an evidentiary hearing after finding that Chuluunbat adequately alleged Article III standing. *Id.* at \*14.

    **B.**    **The District Court erred in dismissing the case due to lack of Article III standing, as Choice has alleged facts that plausibly support that he was harmed, that he took a detrimental step as a result of Defendants' false claim for attorney fees, and that it affected his handling of his debts to his financial and physical detriment**

The District Court dismissed the case based on its conclusion that "Choice has failed to allege an injury in fact", and as a result, Article III standing. [Order, Appx. A-4]. Though not wholly clear, the District Court has thus (apparently) made its ruling on a "facial challenge", which argues that the Choice has not sufficiently "alleged a basis of subject matter jurisdiction." *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). In reviewing a facial challenge, the court must accept all well-pleaded factual

allegations as true and draw all reasonable inferences in favor of the Choice. *Id.* at 443-44. Moreover, "[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly—Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). Thus, the question is whether the well-pleaded factual allegations in the Amended Complaint 'plausibly suggest a claim of subject matter jurisdiction,' *Id.*

The Supreme Court has held that 'each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof.' *E.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *see also Apex Dig.*, 572 F.3d at 443 (quoting *Lujan*, 504 U.S. at 561). Moreover, in evaluating whether a complaint adequately pleads the elements of standing, courts apply the same analysis used to review whether a complaint adequately states a claim: "[C]ourts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Silha,* 807 F.3d at 173 (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

The principles enunciated in the aforementioned cases make it clear that it is not enough for a consumer to merely allege that he was confused or

27

stressed by a collection communication. Rather a consumer must allege that he was put in harm's way as a result of a debt collector's alleged violation. *Casillas*,  926 F.3d at 334. It is not enough for the plaintiff to have been confused; the plaintiff must have acted (or not acted, as the case may be) because of that confusion. *Brunett,* 982 F.3d at 1068. Similarly, a consumer must plausibly allege the effect that an allegedly violative statement had on what he or she did in the context of managing the debt or responding to letters. *Spuhler,* 983 F.3d at 286. Moreover, if an FDCPA violation and resulting confusion "alters a plaintiff's response to a debt," then that concrete injury may support standing. *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021).

### i.    Choice took a "detrimental step" due to his confusion about attorney fees, which altered his response to the same

In this case, unlike in the Seventh Circuit cases cited to above, Defendants' act of filing and serving a collection complaint to collect an alleged consumer debt, which complaint spuriously claimed that "statutory attorney fees" were due and owing in some unspecified amount *in addition to* the amount claimed, inflicted actual harm on Choice when he chose to defend the collection action instead of paying the debt, which he would have done had the spurious fees not been sought. This is because he alleges that he "was not aware, and the unsophisticated consumer would not be aware, that

"statutory attorney fees" could not legally be recovered by Defendants." [Dkt. # 76, ¶62]. Choice further alleges quantifiable financial harm: that he "…hired an attorney and became obligated to pay attorney fees and costs, and paid an appearance fee in the State Action due to the fact that he did not understand the extent of this obligation to Unifund, including the amount of "statutory" attorney fees and costs for which he was claimed to be liable." [Dkt. # 76, ¶63]. Choice also alleges he would have sought to resolve the alleged debt instead of engaging in litigation, hiring an attorney which he would have to pay, and paying an appearance fee as he did, had he known the truth: that "statutory" attorney fees didn't exist as to his obligation, and that he would not be liable for any attorney fees in the State Action—he was thus harmed by Defendants' misrepresentation as to "statutory" attorney fees being assessed. [Dkt. # 76, ¶64]. Notably, the District Court wholly ignored Choice's claim that he suffered a financial harm by having to pay an appearance fee. Choice alleged that Defendants' actions are misleading and deceptive, and unfair, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10), and 1692(f), since "statutory attorney fees" did not exist as to the debt, and thus could not legally be recovered. [Dkt. # 76, ¶¶60, 68]. See *Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012) (false threat of attorney fees is materially false and misleading, and violates the FDCPA).

The District Court also erred in concluding that Choice "did not take any detrimental step because of the confusion". [Order, Appx. A-4]. The failure to provide information that is required under the FDCPA inflicts a concrete injury only if it impairs a plaintiff's ability to use the withheld information "for a substantive purpose that the statute envisioned." *Spuhler*, 983 F. 3d at 286 (quoting *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018)) ; *see Casillas*, 926 F.3d at 333 (quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017)). The FDCPA envisions that debtors will use accurate, non-misleading information in choosing how to respond to collection attempts and how to manage and repay their debts. *Spuhler*, 983 F. 3d at 286; *See generally* 15 U.S.C. §§ 1692(a), (e). This means that for a concrete injury to result from a dunning letter's exclusion of a statement about accruing interest, that exclusion must have detrimentally affected the debtors' handling of their debts. *Spuhler*, 983 F. 3d at 286.

Although the violation alleged in this case stems not from confusion about interest, Choice <u>did</u> take a detrimental step as a result of being mislead about whether the debt was subject to "statutory attorney fees" and paid money, in the form of an appearance fee and hiring an attorney, he would not have paid had he known the truth. Choice asserts that the misleading information was detrimental to Choice's substantive interests and that he took a "detrimental step" as a result of his confusion: Choice, not knowing

30

that the "statutory attorney fees" was merely a threat created by Unifund and Kohn and did not exist in reality, altered his response and chose to defend the case and paid an appearance fee to the court as well as an attorney, which resulted in him spending money he would have not spent had he known the truth, since he would have paid the debt without having to pay an attorney and appearance fee to the state court. [Dkt. # 76, ¶¶ 63-64].

Choice asserts that he did not know how much he owed, as the collection complaint does not state how much the "statutory attorney fees" are [Dkt. # 76, ¶ 75], and that he was further confused because Defendants', in another portion of the collection complaint, state that attorney fees were **not** being sought. [Dkt. # 76, Exhibit E, PageID# 469]. The content of the collection complaint thus altered his response to the debt to his detriment, an action that, as enunciated in *Markakos*, is a concrete injury that could support the existence of Article III standing.

### ii. Paying an Appearance Fee to defend a False Claim confers Article III Standing

Choice's allegation that would have sought to resolve the alleged debt had he known that no attorney fees were owed, and that he would have saved money by not having to pay an appearance fee, was an allegation completely ignored by the District Court in its Memorandum Opinion and Order. [Dkt. # 76, ¶¶ 63-64; Order, Appx. A-2—A-5]. Choice thus alleges that he thus was

31

induced into paying money he would not have paid. He was thus "put in harm's way", and thus suffered an actual financial injury in paying money he would not have paid had he known the truth, since he would have resolved the debt without having to do so. See *Casillas*, 926 F.3d at 334.

With respect to an FDCPA claim in particular, the Seventh Circuit has held that a debtor's decision to hire a lawyer due to her confusion over an allegedly misleading dunning letter was not a concrete injury. *Brunett*, 932 F.3d at 1069. Unlike *Brunett* and similar cases, however, Choice did not hire a lawyer regarding the content of a collection letter *proactively* and then claim injury; rather, faced with a false claim against which he had to defend or face default judgment which would potentially *include* attorney fees, he hired a lawyer to assist in that defense and prevent an entry of default for the false attorney fee claim.

In *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872 (7th Cir. 2020), the Seventh Circuit explained that this distinction between the cost of bringing suit versus the cost of defending a lawsuit is relevant to the injury-in-fact analysis. *Id.* at 880-82. There, a plaintiff filed suit against a consumer credit agency alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* 948 F.3d at 875. The consumer credit agency then counterclaimed, alleging that the plaintiff himself violated the FCRA by obtaining a consumer report through his attorney for the impermissible

32

purpose of bringing the lawsuit, and asserting as its injury the costs incurred in defending against that suit. *Id.* at 875, 880, 883. Given those facts, the Seventh Circuit distinguished cases holding that a plaintiff may not satisfy standing by pointing to the cost of bringing suit, noting that the defendant had "alleged that the harm is the cost of defending the lawsuit, not bringing it." *Crabtree*, 948 F.3d at 881 (emphasis in original). Instead, the court concluded that "in defending claims, [the defendant] has suffered a redressable injury-in-fact that is traceable to [the plaintiff]." *Id.* at 883.

As in *Crabtree*, Choice's alleged injury is the cost of defending a lawsuit that never should have sought "statutory attorney fees", and that was thus an inflated and false claim. Choice alleges he paid an appearance fee and an attorney, both in the operative complaint and in sworn testimony. [Dkt. # 76, ¶¶ 63-64; Dkt. # 95-1, ¶12]. He alleges that he would have paid the alleged debt had the spurious fees not been sought, and that he would have had to neither hire an attorney nor pay an appearance fee had he known the truth—that he owed no attorney fees at all. [Dkt. # 76, ¶¶ 61-64]. As standing may be conferred "when the plaintiff suffers an actual or impending injury, no matter how small.", Choice adequately alleges an injury in the form of an appearance fee and attorney fees for having to defend against a false claim. *See Lako v. Portfolio Recovery Assocs.*, No. 20-cv-355-wmc, 2021 U.S. Dist.

LEXIS 145776 at *8-9 (W.D. Wis. Aug. 4, 2021); *Brandt v. Vill. of Winnetka, Ill.*, 612 F.3d 647, 649 (7th Cir. 2010).

Moreover, Choice's alleged injury is further braced by the time and energy he had to spend in seeking out an attorney to defend and defending against an allegedly wrongful state court collection suit. See *Crabtree*, 948 F.3d at 883 (suggesting the injury in fact suffered by defendant included the "time, money, and energy" that the defendant spent in defending against the plaintiff's lawsuit); *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir.2011) ("What did provide standing, we held, is that the plaintiffs had altered their daily commute, thus incurring costs in both time and money, to avoid the unwelcome religious display."); *Leung v. XPO Logistics, Inc.*, 164 F. Supp. 3d 1032, 1037 (N.D. Ill. 2015) ("When a defendant's allegedly wrongful conduct costs the plaintiff time, the plaintiff has suffered an injury in fact."). Although hiring attorney does not grant "universal standing", the facts in this case—and the money that Choice had to expend to defend against a false claim—is an injury that s both concrete and particularized to Choice, that supports Article II standing.

Though Choice alleged and argued not only that the cost of hiring an attorney caused him harm, but also that he paid an appearance fee in the State Action that he would not have paid had he known that he had no legal exposure to "statutory attorney fees", the District Court wholly ignored this

fact in finding that Choice has failed to allege Article III standing. [Dkt. # 76, ¶¶ 63-64; Dkt. # 95-1, ¶12; Dkt. #95, p.8]. As the Seventh Circuit in *Crabtree* has held that "in defending claims, [the defendant] has suffered a redressable injury-in-fact that is traceable to [the plaintiff]", the basis of this case is no different. The District Court thus erred in ignoring Choice's allegations of injury and dismissing this case for lack of subject matter jurisdiction.

### iii. Choice has plausibly alleged a claim for relief

Moreover, Choice's allegations plausibly evidence that he has standing. To assess whether a complaint states a plausible claim of relief, the Court must apply a two-pronged approach in which a court (1) first identifies the well-pleaded factual allegations by discarding the pleadings that are "no more than conclusions" and (2) then determines whether the remaining well-pleaded factual allegations "plausibly give rise to an entitlement of relief." *Silha*, 807 F.3d at 174 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Choice's well-pleaded factual allegations plausibly suggest a claim of subject matter jurisdiction, as the allegation that he would have sought to resolve the debt and not paid money to the state court or his counsel (or thus expended time in so doing) had he known that no additional attorney fees were due and owing are well pleaded factual allegations that must be taken as true, and which plausibly support an inference that he suffered a financial

injury. [Dkt. # 76, ¶¶ 63-64]. Put another way, it is wholly plausible that Choice could have resolved the debt, as he alleges he would have done, had he known that he did not owe a further amount in "statutory attorney fees", and thus he would not have had to pay money to defend the case if he had been told the truth. Choice has thus plausibly alleged facts that suggest that he suffered a concrete injury, and thus that Article III standing exists. The District Court erred in finding otherwise.

### III. The District Court erred in finding that Choice has, in alleging that he lost sleep as a result of Defendants' actions, not alleged a concrete harm

Choice's amended complaint alleges that he suffered distress, worry and panic as a result of Defendants' actions. [Dkt. # 76, ¶ 65]. Choice further fleshed out the effects that Defendants' misrepresentations regarding his liability for the spurious "statutory attorney fees". [Dkt. # 95-1, ¶ 14]. Choice specifically alleges that he "had difficulty sleeping on the date I was served and on other nights thereafter" when he worried about how much he would have to pay in statutory attorney fees. [Dkt. # 95-1, ¶ 14].

The District Court found that a claim of lost sleep, as alleged by Choice, cannot establish concrete harm. [Order, Appx. A-3—A-4]. The District Court specifically stated that, "As pure psychological harm, sleep deprivation caused by worry alone cannot establish standing." [Order, Appx. A-4]. This is

incorrect, however, and the District Court fails to cite to any precedent to support its conclusion that loss of sleep is a "purely psychological" harm.

Indeed, contrary to the District Court's conclusion, other courts have consistently explained that allegations of loss of sleep amount to physical manifestations that make the allegations of emotional distress real, not abstract, even if not necessarily significant. *See, e.g., Crowder v. Andreu, Palma, Lavin & Solic, PLLC*, 2021 U.S. Dist. LEXIS 69220, 2021 WL 1338767, at *4 (M.D. Fla. Apr. 9, 2021) ("There must be something from which the Court can conclude Crowder's alleged injury is real, and not abstract. Any number of facts might do the trick (e.g., loss of sleep or inability to concentrate). But with just the conclusory statement that a statutory violation cased an injury, there is no standing." (Internal citations and quotation marks omitted)); *Rivas v. Midland Funding, LLC*, 842 Fed. App'x 483, 486 (11th Cir. 2021) (loss of sleep and extreme stress injuries sufficiently tangible and concrete to confer Article III standing); *Waldrop v. LTS Collections Inc.*, 2020 U.S. Dist. LEXIS 208548, at *3 (D. Ariz. Nov. 6, 2020) (allegations of fear, anxiety, stress, mental anguish, and loss of sleep, loss of appetite, and headaches sufficient to establish a concrete injury for purposes of determining damages under the FDCPA); *Russell v. Taylor Law, PLLC*, U.S. Dist. LEXIS 207677, at *9 (N.D. Ind. Oct. 27, 2021) (allegation of loss of sleep is concrete and particularized); *Kinnick v. Med-1 Sols., Ltd. Liab. Co.*,

2021 U.S. Dist. LEXIS 105303, at *13-15 (S.D. Ind. June 4, 2021) (allegation of loss of sleep found to be a sufficiently concrete emotional harm, so plaintiff had shown that an Article III case or controversy exists in order to establish standing for his claims).

The reasoning in the cases referenced above is persuasive and should be adopted here: Choice's allegations are distinguishable from cases that allege a statutory violation where plaintiffs failed to tie the alleged FDCPA violations to any detrimental step or concrete harm, as Choice alleges both how and when he suffered physical manifestations of the stress he experienced as a result of Defendants' actions. For these reasons, Choice has alleged a sufficiently tangible and concrete emotional harm, and the physical manifestations thereof, and has shown that an Article III case or controversy exists in order to establish standing for his claims.

### i.     *Pennell* is Inapposite

The District Court cites to Pennell in support of its dismissal, referencing that "stress by itself with no physical manifestations and no qualified medical diagnosis [does not] amount to a concrete harm." [Order, Appx. A-4]. The Seventh Circuit clarified in its recent *Pennell* decision that allegations of stress, without more, fall short. *See Pennell*, 990 F.3d at 1045 ("Pennell alleged in her complaint that Global Trust's dunning letter caused stress and confusion. But we made clear in Brunett that the state of

confusion is not itself an injury. Nor does stress by itself with no physical manifestation and no qualified medical diagnosis amount to a concrete harm." (Internal citations and quotation marks omitted)). The Seventh Circuit concluded that Pennell "failed to show that receiving Global Trust's dunning letter led her to change her course of action…Instead, she merely pointed to a statutory violation, which is not enough to establish standing under Article III." *Id. See also Brunett*, 982 F.3d at 1069.

Choice here does not "merely point to a statutory violation" as the Choice in *Pennell*, however. He also does not point to stress "by itself, without more" to support that he has standing. Rather, Choice alleges a "physical manifestation" of his stress in the form of lost sleep, which he alleges was caused directly by Defendants' actions.  [Dkt. # 95-1, ¶ 14].  The injury is both concrete and particularized, and uncontradicted by Defendants. Choice has thus presented not only allegations, but rather sworn testimony, uncontradicted by Defendants, that shows injury in fact. The District Court's reliance on *Pennell,* which does not even involve a claim of loss of sleep or whether it constitutes a physical manifestation of stress, is unavailing and not a basis to find that standing does not exist.

### ii.    Choice's Injury is Concrete

 Nor does Choice allege an injury that is not concrete. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a

legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Larkin*, 982 F.3d at 1064. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Choice thus must allege an injury that that is "both concrete and particularized." *Id.* "A concrete injury must be de facto; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1548. Put slightly differently, a concrete injury is one that is "real, ... not abstract." *Id.*

Choice's injury here actually exists. Specifically, Choice incurred a financial harm by being told that he owed "statutory attorney fees" in an unspecified amount, which caused him to pay for an appearance in the State Action and hire an attorney to defend against the false claim, and suffered physical manifestations of stress in the form of lost sleep. [Dkt. # 76, ¶¶ 63-65; Dkt. # 95-1, ¶ 14]. He alleges he would have resolved the debt had he been told the truth, obviating the need to hire an attorney or pay an appearance fee. He thus paid money he would not have paid had he known the truth, all due to Defendants' misrepresentations.  The injury is thus in part a real financial injury, can be quantified, and is not abstract. It is thus concrete. The same holds true for his claims that he lost sleep: he alleges a physical manifestation of emotional distress that is both concrete and particularized, further supporting his claim for standing.

### iii.   *Chuluunbat* supports that Choice's injury is traceable to Defendants' actions, and is concrete

The Seventh Circuit's recent decision in *Chuluunbat v. Weltman, Weinberg & Reis Co., LPA*, No. 21-1584, 2022 U.S. App. LEXIS 13713, at *11-12 (7th Cir. May 20, 2022), cited *infra*, is instructive on why Choice has suffered a concrete injury, and why Choice's injury is traceable to Defendants' actions. There, Weltman, Weinberg & Reis, a debt collector, sent misleading letters to him and others similarly situated that did not indicate that the amount owed was increasing daily due to interest. *Id.* at 2.  The plaintiff alleged that the omission induced him to forgo settling and instead to allow interest on his debt to accrue at a high rate. *Id.*

Chuluunbat argued that his injury was fairly traceable to Weltman because he would have paid the settlement if Weltman had explained that the reduced amount would satisfy a judgment on which interest was increasing daily. *Id.* at 9. The Seventh Circuit found that the district court should have accepted Chuluunbat's allegation in the amended complaint as true. *Id.* The Seventh Circuit noted that Chuluunbat "needed to allege only a causal connection between his injury and Weltman's conduct, not that Weltman's action is the *only* cause." *Id.*  See *J.B. v. Woodard*, 997 F.3d 714, 720 (7th Cir. 2021). The Seventh Circuit concluded that Chuluunbat adequately pleaded a causal connection; his decision to forego settling is

fairly traceable to Weltman's purportedly misleading letter because, regardless of whether Chuluunbat knew the relevant law, he says he would have accepted the offer if he had known it would satisfy the judgment and that interest would continue to accrue if he did not accept. *Id.* The Court found that Chuluunbat alleged dollars-and-cents harm resulting from the letter, as he owed more money due to Weltman's act of not informing him that the debt was increasing daily, causing him to forego paying the same and thus he owed more money as a result, making the harm concrete. *Id.* at 7. The Seventh Circuit found that this was enough to allege Article III standing. *Id.* at 13-14. The Seventh Circuit vacated and remanded for further proceedings. *Id.*

This case is on all fours with *Chuluunbat*. Like Chuluunbat, Choice alleges "dollars-and-cents harm" as a result of being falsely informed that he owed "statutory attorney fees", since he paid an appearance fee in the State Action and hired a lawyer—actions he alleges that he would not have taken had he known the truth, since he would have paid the alleged debt. Also like Chuluunbat, Choice adequately plead a causal connection; his decision to forego settling is fairly traceable to Defendants' false attorney fee claim, as he says he would have settled the case had he known that he didn't owe even more money in the form of attorney fees. For the same reasons the Seventh

Circuit found that Chuluunbat had standing, Article III standing exists in this case.

### iv.   Choice's injury is particularized

Choice's injury is also particularized. An injury is particularized if it "affect[s] the Choice in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Here, Choice was himself affected by the content of the State Action collection complaint, which he read and whose accuracy he relied upon, and he personally suffered a financial injury and physical manifestations of stress as a result. [Dkt. # 76, ¶¶ 63-65; Dkt. # 95-1, ¶ 14]. As Choice's alleged injury is both concrete and particularized to him, he has established Article III standing, and the District Court erred in finding otherwise.

### IV.   The District Court erred in relying on Choice's admission that he did not suffer actual damages, served before Choice was granted leave to file an amended complaint which added an allegation of actual damages

Although not wholly clear, the District Court also based its dismissal, at least in part, on Choice's admission in discovery that the parties engaged in with respect to the originating complaint, wherein Choice admitted that he did not suffer any actual damages. [Order, Appx. A-5]. The District Court thus also seemed to consider a "factual attack" made by Defendants on facts underlying Choice's assertions that Article III standing exists—specifically that he did not suffer actual damages.

In its brief in the District Court, Unifund argued that Choice admitted in his responses to requested admission and interrogatories that he did not suffer any actual damages, and thus he could not have suffered and harm to support Article III standing. [Dkt. # 78-1, p.10]. The District Court seemed to have adopted Unifund's position. [Order, Appx. A-5]. Setting aside for a moment that lack of actual damages does not automatically equate to a lack of concrete harm, the District Court wholly ignored the fact that Choice's discovery responses were based on his allegations in the originating complaint that <u>did not</u> allege actual damages as to Choice, and that the District Court stayed all discovery on the amended version of the complaint *before any discovery on the amended claims could even occur*—which was apparently Defendants' strategy so that it could make the very argument upon which it now relies.

A brief procedural history is instructive to show why the referenced discovery responses should bear no weight, in this case, on the issue of whether standing exists. Choice filed his original complaint on August 27, 2019. [Dkt. #1]. Choice alleged two separate class counts. Count I sought statutory damages only, and was brought on behalf of (1) all persons similarly situated in the State of Illinois (2) from whom Defendants attempted to collect a debt (3) by filing and serving a complaint in an Illinois Circuit Court (4) which includes a Rule 280.2 affidavit (5) where the box

labeled "[p]laintiff is seeking additional amounts after the charge-off date" (6) is checked "[No]" (7) although Unifund seeks "…costs and disbursements of this action, statutory attorney fees…" in its prayer for relief. [Dkt. #1, ¶ 65; Request for Relief, p. 11]. Notably, Choice did not seek actual damages.

Count II sought statutory damages, and actual damages <u>only on behalf of those class members which paid "statutory attorney fees"</u>—which Choice did <u>not</u> pay. Count II was brought on behalf of (1) all persons similarly situated in the State of Illinois (2) from whom Defendants attempted to collect a debt (3) by filing and serving a complaint in an Illinois Circuit Court (4) which references and seeks "statutory attorney fees". [Dkt. #1, ¶ 70; Request for Relief, p. 13]. Choice thus did not allege that he suffered any actual damages as a result of Defendants' actions, in the originating complaint, as he did not pay any statutory attorney fees to Defendants.

Thereafter, Defendant Unifund served discovery requests, including requests to admit and interrogatories. On March 4, 2020, Choice served responses to said requests. [Dkt. #78-2]. In his responses, Choice admitted that he suffered no actual damages with respect to his claims in the originating complaint, both in response to a requested admission and an interrogatory on the subject. [Dkt. #78-2]. Specifically, Unifund's Interrogatory #11 to Choice, and his response, reads:

45

11.    If you claim emotional distress or other non-economic losses, identify every specific physical, mental, emotional, or other condition that pertains to the events described in the Complaint.
ANSWER:  Choice is not claiming actual-damage emotional distress or other non-economic losses.

[Dkt. #78-2, p. 4, 11].

Similarly, Unifund served a request to admit on Choice, which

request and response by Choice, served on March 4, 2020, is as follows:

1. Admit that you did not incur any actual damages as a result of Unifund's acts or omissions.
   ANSWER: Admit.

2. Admit that you did not incur any actual damages as a result of Unifund's acts or omissions.
   ANSWER: Admit.

[Dkt. #78-2, p. 8, 11].

Thereafter, over 10 months later on January 21, 2021, Choice filed his

First Amended Class Action Complaint, by leave of court. [Dkt. #75-77].

Though the class definitions remained the same, Choice now sought both

actual and statutory damages on behalf of himself and the class putative

members. [Dkt. # 76, ¶90; Request for Relief, p. 15; ¶95, Request for Relief, p.

16]. Though discovery was open, neither Defendant served new discovery

requests relevant to the amended complaint.

On February 4, 2021, both Unifund and Kohn filed a motion to dismiss

the case on lack of Article III standing, and a briefing schedule was set on the

same. [Dkt. #78, 80].  On April 5, 2021, Unifund filed a motion to stay

discovery pending a ruling on its motion to dismiss. [Dkt. #91]. Unifund's basis for seeking a stay was "Because the motion to dismiss is jurisdictional, it would be improper for the parties to engage in discovery prior to any ruling on the pending motion to dismiss." [Dkt. #91, ¶11]. The District Court granted the motion on the same day, on April 5, 2021, without giving Choice an opportunity to respond. [Dkt. #93].

i.    **By Allowing Amendment to Add a Request For Actual Damages, The District Court Should Not Have Dismissed the Case Based on an a Pre-Amendment Admission that No Actual Damages Were Suffered**

The District Court erred in relying on an admission that Choice did not suffer actual damages, based on and made during the time the originating complaint was pending, which did not allege that Choice suffered actual damages. Rule 36(b) of the Federal Rules of Civil Procedure provides that "(a)ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." The rule continues:

> **(b) Effect of an Admission; Withdrawing or Amending It.** A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

47

USCS Fed Rules Civ Proc R 36

Although Choice never sought to amend the admission that he did not incur actual damages, he did seek and obtain leave to amend his complaint to add a request for actual damages. [Dkt. #75-77]. Though the class definitions remained the same, Choice now sought both actual and statutory damages on behalf of himself and the class putative members. [Dkt. # 76, ¶90; Request for Relief, p. 15; ¶95, Request for Relief, p. 16]. The purpose of Rule 36 is to permit the person obtaining the admission to rely thereon in preparation for trial. There is no way in which Unifund and Kohn, in this case, could have relied on such admission—that no actual damages were being sought—to their prejudice in view of the amendment to Choice's complaint adding actual damages, as permitted by the court. Under the circumstances of this case, permission to amend the complaint was tantamount to permission to withdraw the admission. See *Gardner v. S. Ry. Sys.*, 675 F.2d 949, 953-54 (7th Cir. 1982)(finding that Court's permission to amend an answer that previously admitted a matter, to a denial of the matter, was tantamount to permission to withdraw an admission on the same subject).

This is especially so because, as stated, discovery was ongoing, and Choice and Unifund did not seek any discovery on the allegations of the amended complaint filed on January 21, 2021 [Dkt. #76], but immediately filed their motions to dismiss on the basis of lack of standing on February 4,

2022. [Dkt.#78, 79]. Rather, Unifund filed a motion to stay discovery [Dkt. #91], wherein Unifund's argued "Because the motion to dismiss is jurisdictional, it would be improper for the parties to engage in discovery prior to any ruling on the pending motion to dismiss." [Dkt. #78, ¶11]. The District Court granted the motion on the same day, on April 5, 2021, without giving Choice a chance to respond. [Dkt. #93]. Unifund's gamesmanship in arguing for a stay of discovery on the basis that it would be improper to engage in discovery as it is irrelevant to the motions to dismiss, only to thereafter argue that Choice's admission in discovery on the previous version of the complaint bars his assertions of Article III standing, exemplifies "dirty pool" that should not have been ratified by the District Court, and the District Court erred in relying on said admission as a factor in deciding that Choice did not allege or establish Article III standing. [Dkt. #97, p.5].

### ii.    Actual Damages and Actual Harm Are Not the Same Thing

Unifund and Kohn's argument that Choice's admission that he incurred no actual damages means he suffered no "actual harm", adopted by the District Court, is erroneous. In *Spokeo*, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549; see also *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (no standing for "a statutory violation completely removed from any concrete harm or appreciable risk of harm"). This means

that a concrete harm can be established *even with* a statutory violation. Choice's alleged admission, made during the pendency of the originating complaint wherein he did not seek actual damages, is irrelevant; the standing inquiry considers whether a Choice suffered an injury in fact, not actual damages. See *Wheeler v. Midland Funding LLC*, No. 15 C 11152, 2020 U.S. Dist. LEXIS 52409, 2020 WL 1469449, at *4 (N.D. Ill. Mar. 26, 2020) ("Defendants confuse a lack of actual damages with a lack of injury."); *Centeno v. LVNV Funding, LLC*, No. 17 C 5233, 2020 U.S. Dist. LEXIS 233267, at *8-9 (N.D. Ill. Dec. 10, 2020). The District Court thus erred in equating Choice's "admission" that he did not suffer actual damages with an admission that he did not suffer actual harm.

## V.   The District Court Should Have Allowed Discovery and Ordered an Evidentiary Hearing

When the defendant challenges the truth of the facts underlying the plaintiff's allegations of standing, the district court must resolve any dispute before determining whether the Choice has standing. See *Bazile*, 983 F.3d at 277, 281. This is because the District Court has a responsibility to police subject matter jurisdiction and that if the court has notice that the facts alleged in plausible support of standing are false or if the complaint "fairly shrieks" that there's no jurisdiction, then the court must conduct proceedings and get sufficient evidence to resolve the doubt. *Id.*

The District Court did not so here, and should have allowed discovery to commence on the amended claim, which asserts actual damages and further facts to support that Article III standing exists, so that it could thereafter make this type of factual finding. *Chuluunbat,* 2022 U.S. App. LEXIS 13713, at *11-12. This is especially so because Unifund sought to stay discovery, with which the District Court agreed and ordered [Dkt. # 93], on the basis that discovery is irrelevant to the "jurisdictional" issues that are the subject of the motions, only to thereafter argue a "factual attack" that Choice's previous discovery responses (on a superseded version of the complaint) forecloses Choice's arguments on standing.  Unifund's specific basis for seeking a stay was "Because the motion to dismiss is jurisdictional, it would be improper for the parties to engage in discovery prior to any ruling on the pending motion to dismiss…A delay in discovery, pending the Court's decision on Unifund's motion to dismiss, will not prejudice the plaintiff's case and will allow the Court to focus on the jurisdictional issues prior to delving into the merits of the case. [Dkt. #91, ¶¶ 11, 13]. Unifund should not have been allowed to have it both ways. It improperly and unfairly used discovery as both a shield and a sword, as it sought a stay of discovery on the basis that it wasn't relevant to standing, yet thereafter used Choice's previous discovery responses to argue that he did not have standing.  The District Court's reliance on the admissions was thus in error.

## CONCLUSION

For the reasons set forth above, this Court should reverse the District Court's order and judgment dismissing this case for lack of Article III standing, and should remand the case for further proceedings consistent therewith.

Dated: August 5, 2022

Respectfully submitted,

By: */s/Mario Kris Kasalo*

The Law Office of M. Kris Kasalo, Ltd.
 Mario Kris Kasalo
 4950 Madison St., PO Box 1425
 Skokie, IL 60077
 P: (312) 726-6160
 F: (312) 698-5054
 E: mario.kasalo@kasalolaw.com

*Counsel for Choice-Appellant*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limitation of Circuit Rule 32(c) because, including footnotes but excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), is 12,301 words.

This document complies with the typeface requirements and the type-style requirements of Circuit Rule 32(b) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in size 13, Century font.

Dated: August 5, 2022                    Respectfully submitted,

By: */s/Mario Kris Kasalo*

The Law Office of M. Kris Kasalo, Ltd.
Mario Kris Kasalo
4950 Madison St., PO Box 1425
Skokie, IL 60077
P: (312) 726-6160
F: (312) 698-5054
E: mario.kasalo@kasalolaw.com

*Counsel for Plaintiff-Appellant*

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the Appendix.

Dated: August 6, 2021

By: */s/Mario Kris Kasalo*
Mario Kris Kasalo

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: */s/Mario Kris Kasalo*
Mario Kris Kasalo

APPENDIX

ILND 450 (Rev. 10/13) Judgment in a Civil Action

Case: 1:19-cv-05773 Document #: 106 Filed: 06/11/21 Page 1 of 1 PageID #:623
Case: 21-2288    Document: 26    Filed: 08/05/2022    Pages: 75

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Calvin J Choice,

Plaintiff(s),

v.

Unifund CCR, LLC. et al,

Defendant(s).

Case No.  19 cv 5773
Judge Sharon Johnson Coleman

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $    ,

which ☐ includes    pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☒    in favor of defendant(s) Unifund CCR, LLC., Kohn Law Firm S.C.
and against plaintiff(s) Calvin J Choice.

Defendant(s) shall recover costs from plaintiff(s).

---

☐    other:

---

This action was *(check one)*:

☐ tried by a jury with Judge    presiding, and the jury has rendered a verdict.
☐ tried by Judge    without a jury and the above decision was reached.
☒ decided by Judge Sharon Johnson Coleman on a motion to dismiss.

Date:   6/11/2021

Thomas G. Bruton, Clerk of Court

Yvette Montanez, Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALVIN J. CHOICE, on behalf of himself and all others similarly situated | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| UNIFUND CCR, LLC, and KOHN LAW FIRM S.C., | ) ) ) |
| Defendants. | ) ) |

Case No. 19-cv-5773

Judge Sharon Johnson Coleman

**MEMORANDUM OPINION AND ORDER**

This case arises from plaintiff Calvin Choice's failure to pay debt owed to his bank, Citibank, and the resulting actions by defendants Unifund CCR, LLC ("Unifund") and Kohn Law Firm S.C. ("Kohn") to try to recover the debt. Before the Court are defendants' separate motions to dismiss [78] and [79] for lack of jurisdiction and failure to state a claim. For the reasons set forth below, both motions are granted.

**I.     Background**

Plaintiff incurred debt from charges to his Citibank consumer credit account that he failed to pay. After defaulting on the debt, Unifund purchased the debt and hired Kohn to collect it. Kohn sued the plaintiff in Cook County for the debt ($3,098.44), costs, and statutory attorney's fees. Unifund also sought attorney's fees from the plaintiff. In an affidavit attached to the Cook County complaint, however, Unifund and Kohn indicated they were not seeking attorney's fees. Plaintiff became confused about whether he owed attorney's fees and hired counsel to advise him. In fact, the statute under which Kohn sued in Cook County did not authorize attorney fees and plaintiff's counsel informed him of such. An arbitration award in the Cook County action did not assess attorney's fees, meaning plaintiff has not paid or been ordered to pay defendants' attorney's fees.

1

A-002

Plaintiff filed this putative class action lawsuit under the Fair Debt Collection Practices Act ("FDCPA"), alleging that defendants' misrepresentation about attorney's fees harmed him because plaintiff was deprived of truthful information that may have led to him deciding to pay the debt rather than litigating. Defendants bring separate motions to dismiss for lack of standing and Kohn adds a failure to state a claim argument.

## II.     Legal Standard

The ability of federal courts to hear cases stems from the Article III of the Constitution, which allows them to resolve "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. Accordingly, a threshold requirement for bringing a case in federal court is standing. To establish standing, "a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.,* ––– U.S. –––, 140 S. Ct. 1615, 1618, 207 L.Ed.2d 85 (2020); *see also Spokeo, Inc. v. Robins*, ––– U.S. –––, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). At the pleading stage, the court must determine whether the complaint clearly alleges facts demonstrating each required element. *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (internal citations omitted).

## III.     Analysis

The parties dispute the first element of standing: that plaintiff suffered an injury in fact that is concrete, particularized, and actual or imminent. Defendant argues that plaintiff cannot satisfy this element because bare procedural violations of the FDCPA do not constitute a concrete harm. Plaintiff argues that he suffered concrete harm because, relying on defendants' assertions that plaintiff would owe attorney fees, plaintiff became confused and thought it would be better to litigate rather than pay the alleged debt. Plaintiff claims that if he had known defendants could not

2

seek attorney fees from him, he would have paid the debt instead.  Plaintiff also claims that he

suffered actual damages of lost sleep from the emotional distress caused by defendants' actions.

Plaintiff's complaint stems from confusion over whether he could be liable for statutory

attorney's fees in the Cook County case.  Confusion alone cannot establish standing; a plaintiff must

allege that he took some detrimental step because of the confusion.  *See, e.g., Smith v. GC Servs. Ltd.*

*P'ship*, 986 F.3d 708, 710 (7th Cir. 2021); *see also Pennell v. Glob. Tr. Mgmt., LLC,* 990 F.3d 1041, 1045

(7th Cir. 2021).  One such detrimental step could be paying something that is not owed.  *Smith*, 986

F.3d at 710.  For example, plaintiff would have standing if his confusion led to paying statutory

attorney's fees that were not owed.  But plaintiff did not actually pay the attorney's fees and instead

alleges that the confusion caused him to take the detrimental step of hiring a lawyer.  This circuit is

clear that hiring a lawyer cannot establish standing.  *See Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d

1067, 1069 (7th Cir. 2020) (stating that "[a] desire to obtain legal advice is not a reason for universal

standing").  Accordingly, plaintiff's claim of harm based on his retention of counsel fails.

Plaintiff also claims that he suffered concrete harm in the form of lost sleep.  The Seventh

Circuit has held that "stress by itself with no physical manifestations and no qualified medical

diagnosis [does not] amount to a concrete harm."  *Pennell*, 990 F.3d at 1045; *see also United States v. All*

*Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015) (noting that "purely

psychological harm" does not establish standing).  This Court finds that the same reasoning applies

to a claim of lost sleep.  As pure psychological harm, sleep deprivation caused by worry alone cannot

establish standing.  Since plaintiff's only other claim of harm is hiring counsel and the Court has held

that such harm does not establish standing, plaintiff has failed to allege an injury in fact.

Plaintiff argues that an appreciable *risk* of harm, not only an actual harm, is enough to

constitute standing.  Specifically, plaintiff claims that defendants' actions increased the risk of harm

to plaintiff by leading the plaintiff to pay fees that were not owed.   This claim does not sway the

A-004

Court to rule any differently. Plaintiff essentially argues that he has standing because defendants'

claims in state court for attorney's fees could have led him to pay such fees. This argument implies a

complete distrust in the court system; plaintiff assumes the state court would have completely

disregarded the law and forced him to pay fees that were not owed. The risk of a court forcing

plaintiff to pay attorney's fees was incredibly minimal, the arbitrator in the state court case correctly

refused to award attorney's fees, and plaintiff admitted in discovery that he did not actually pay any

attorney's fees.

To summarize, "plaintiff[] seek[s] to invoke the power of the federal courts to litigate an

alleged FDCPA violation that did not injure them in any concrete way, tangible or intangible."

*Larkin*, 982 F.3d at 1066-1067. This is impermissible. *Id.* Further, plaintiff admitted in discovery

that he did not suffer any actual damages. Dkt. 78-2, Plaintiff's Responses to Defendant's Requests

for Admission, pg. 8. Plaintiff's admission that he did not suffer actual harm and failure to allege or

argue any legitimate actual harm doom his complaint.

## IV.    Conclusion

The Court does not have subject matter jurisdiction over this case. Defendants' motions to

dismiss [78] and [79] for lack of standing are granted. **IT IS SO ORDERED**.

Date:    June 11, 2021                    Entered:

SHARON JOHNSON COLEMAN
United States District Court Judge

4

**EXHIBIT A**

EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CALVIN CHOICE, on behalf of himself          )
and all others similarly situated,           )
                                             )
        PLAINTIFF,                          )
                                             )      Case No. 19-cv-05773
        v.                                  )
                                             )      Honorable Sharon Johnson Coleman
UNIFUND CCR, LLC, and KOHN                    )
LAW FIRM S.C.                                )      Magistrate Judge Jeffrey Cummings
        DEFENDANTS.                         )

## DECLARATION OF CALVIN CHOICE

Calvin Choice, being first duly sworn on oath, deposes and states as follows:

1.    I am over the age of 21, under no legal disability, and I have personal knowledge of the facts set forth in this Declaration. If called as a witness I could and would testify to the following:

2.    I am the Plaintiff in this case, am a natural person, and I reside in this District.

3.    Kohn Law Firm, on behalf of Unifund CCR, LLC, thereafter filed a lawsuit against me on July 11, 2019, in the Circuit Court of Cook County, Illinois ("State Action"), styled *Unifund CCR LLC v. Calvin J Choice*, Case No. 2019-M1-111728.

4.    I was served with the State Action thereafter, and I read and reviewed the State Action Complaint.

5.    The State Court Complaint read that plaintiff demands judgment against the defendant in the amount of $3,098.44 as well as the costs and disbursements of this action, statutory attorney fees and any other relief this court deems just and equitable.

6.    I thought that this meant that I would have to pay statutory attorney fees to the company that sued me.

7.    I did not know that statutory attorney fees do not exist in this type of scenario and
      that the statement was false.

8.    Attached to the State Complaint was an affidavit ("Affidavit") executed by Bobbie
      Johnson.

9.    However, the Affidavit indicated that no attorney fees were being sought.

10.   I thus was uncertain whether attorney fees were being sought as the documents
      contained within the State Court Complaint stated both that attorney fees were
      being sought, and also that they weren't.

11.   I was not aware that "statutory attorney fees" could not legally be recovered by
      Defendants in Illinois, as they did not exist for my type of case, until my attorneys
      told me this fact.

12.   I hired an attorney and became obligated to pay attorney fees and costs to the law
      firm I hired, and paid an appearance fee in the State Action due to the fact that I did
      not understand the extent of this alleged obligation to Unifund, including the
      amount of "statutory" attorney fees for which I was claimed to be liable.

13.   I would have sought to resolve the alleged debt instead of engaging in litigation,
      hiring an attorney which he would have to pay, and paying an appearance fee as he
      did, had I known the truth: that "statutory" attorney fees didn't exist as to my debt,
      and that I would not be liable for any attorney fees in the State Action.

14.   I thought I owed much more than the amount stated in the State Complaint due to
      Defendants' misrepresentation regarding attorney fees, and I experienced
      substantial fear, extreme emotional distress, worry and panic as a result of said
      misrepresentation. I had difficulty sleeping the night on the date I was served and

other nights thereafter when I worried about how much I would have to pay in statutory attorney fees to Unifund CCR, LLC and whether I could afford to resolve the alleged debt as a result of those added attorney fees.

15.    I also later thought that Defendants were potentially trying to trick me via the content of the State Court Complaint, since two different, contradictory statements as to whether attorney fees were being sought were stated, and I hired an attorney based on this belief as well.

16.    I read the State Court Complaint and was confused regarding the amount of money that was being sought from me, and I hired an attorney to help me ascertain the amount of the alleged debt owed, whether attorney fees could be imposed, and in what amount.

17.    I would have paid attorney fees if Defendants Unifund and Kohn would have asked me to after I was served with the lawsuit and if I could afford the request, as I was afraid and did not know that I didn't owe them until well after I was served with the collection lawsuit, and did not think that I was being tricked until a later time.

18.    I also believed that a decision to contest the debt could have turned out to be much more costly than paying it, as Unifund's request for a judgment that included "statutory attorney fees" caused me to believe that the money I would owe in connection with the alleged debt would be much higher if I chose to defend in the State Action, since Unifund would then have to pay its attorneys more money which I in turn would have to pay Unifund.

Pursuant to 28 U.S.C. § 1746(2), I, Calvin Choice, hereby declare under penalty of perjury

that the foregoing is true and correct.


Dated: April 9, 2021        By: _____
                                    Calvin Choice